IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 24-cv-01518-PAB-KAS

KASONDRA MATHEWS, on her own behalf and
on behalf of all others similarly situated,

    Plaintiff,

v.

ELITE NURSES MANAGEMENT, LLC,

    Defendant.

## JOINT MOTION FOR PRELIMINARY APPROVAL OF
## COLLECTIVE AND CLASS ACTION SETTLEMENT

COME NOW the Parties, through undersigned counsel, to submit this Joint Motion for Preliminary Approval of Collective and Class Action Settlement and to respectfully request that the Court:

1. Conditionally certify a stipulated collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages" and order that notice be sent to all putative FLSA Plaintiffs so that they have the opportunity to opt-in to this action;

2. Preliminarily certify a Class Action under Colorado statutory wage law, per Fed. R. Civ. P. 23, defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime

wages" and order that notice be sent to this group so that members have the opportunity to opt-out or object to the proposed Settlement;

3. Appoint Brandt Milstein as Class Counsel and Kasondra Mathews as Class Representative;

4. Grant preliminary approval to the Parties' Settlement Agreement (Exhibit 1); and

5. Set a final fairness hearing at the Court's earliest convenience at least 140 days after the date on which the Court grants this Motion.

## PROCEDURAL HISTORY

Plaintiff filed this action for unpaid wages in Colorado state court on May 1, 2024 alleging that Defendant misclassified a number of its health care provider employees as independent contractors and failed to pay them proper overtime wages. ECF No. 18. Defendant removed the action to this Court on federal question jurisdiction grounds on May 29, 2024. ECF No. 1.

Plaintiff pleaded collective allegations of the federal Fair Labor Standards Act (29 U.S.C. § 201 et seq.) ("FLSA") and Fed. R. Civ. P. 23 class violations of Colorado's Minimum Wages of Workers Act (C.R.S. § 8-6-101 et seq.) as implemented by the Colorado Overtime and Minimum Pay Standards Order ( "COMPS") and the Colorado Wage Claim Act ("CWCA"), C.R.S. § 8-4-101 et seq.).

The Parties agreed to engage in early settlement negotiations and were granted a stay of discovery proceedings pending a Settlement Conference set for July 16, 2025 before Judge Starnella. Defendant produced to Plaintiff wage and hour data for the putative FLSA Plaintiffs and Rule 23 Class Members. In addition to this informal discovery, Plaintiff promulgated formal written discovery to secure the data and other evidence required to prove up her allegations and to prepare for the Settlement Conference. Prior to the Conference, the Parties exchanged detailed class

2

damage calculations, argument and evidence underlying their positions and their calculations, and exchanged settlement demands.

The Parties took part in a Settlement Conference before Judge Starnella on July 16, 2025, and were able to reach an agreement to settle this putative collective and class action on the terms set forth in the Settlement and Release Agreement attached hereto as Exhibit 1.

The agreement reached by the Parties contemplates a stipulated collective action under the FLSA and a stipulated Fed. R. Civ. P. 23 class as to Plaintiff's state law class claims. The Parties request that the Court: 1) Preliminarily certify their stipulated FLSA Collective Action and their stipulated Rule 23 Class Action; 2) Order that FLSA opt-in notice issue, to be followed by Rule 23 settlement notice; 3) Grant preliminary approval to their Settlement Agreement (Exhibit 1); and 4) Set a final fairness hearing (at least 140 days after entering an Order granting this Motion) at which arguments for and against final approval might be heard.

## SUMMARY OF THE SETTLEMENT TERMS

To determine the value of the Plaintiff's and each Class Member's claims, Plaintiff created a damages model from the raw data produced by Defendant that captures all overtime hours worked which were not properly compensated. Plaintiff based her negotiation positions on this data-based damages model and the information she gathered regarding Defendant's alleged misclassification of some of its hourly employees.

**Settlement Fund**. The settlement provides that Defendant will pay $100,000.00 to compensate Plaintiff and the Members of the Class who do not opt-out for their damages, inclusive of attorney fees and an incentive award to the representative Plaintiff. The parties have agreed that the Settlement Fund will be allocated as follows: a $10,000.00 service award to the named Plaintiff, Class Counsel's attorney fees and costs totaling $35,000.00, and a Class Fund of $55,000.00 less

3

settlement administration costs (not to exceed $10,000.00) and the employer's share of FICA and FUTA taxes, and other applicable employer tax contributions, arising from the payment of back wages. To keep settlement costs down, Defendant will be responsible for issuing all payments contemplated under the Agreement.

**Settlement Collective Action and Settlement Class Action**. For settlement purposes only, the Parties stipulate to the certification of an FLSA collective action defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages" and a Fed. R. Civ. P. 23 class defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages."

**Payment to the Class Members**. The Class Fund will be distributed on a proportionate basis to all Participating Class Members based on the unpaid overtime reported on Defendant's pay records. The precise calculations are to be determined by Class Counsel. Defendant will provide class member data as necessary to Class Counsel to allow for calculation and distribution of individual settlement awards. Defendant represents and warrants that all payroll information provided and that will be provided is complete and accurate to the best of its knowledge, information, and belief.

If any Settlement Class Members file Opt-out forms, the funds attributable to those Class Members shall be re-distributed, on a pro-rata basis, to those Class Members who do not opt-out to the settlement. Should any funds remain in the Class Fund after settlement checks issue and become void (90 days after issuance), such funds will not revert to Defendant. Rather, the funds attributable to those Class Members shall be re-distributed, within 120 days of the original

issuance, on a pro-rata basis, to those Class Members who negotiate their settlement checks. Defendant shall provide Class Counsel with an accounting of uncashed checks within 100 days of the original check issuance, and a second accounting of the second distribution within 130 days of the original issuance.

**Service Award**. In recognition of her work on behalf of the Class and the risk taken by the named Plaintiff in initiating this litigation, the Parties have agreed to the payment of a service award to the named Plaintiff and Rule 23 Class Representative Kasondra Mathews in the amount of $10,000.00.

**Release of Claims**. Plaintiff and the Class Members who participate in the settlement will release Defendant from all claims which were pleaded in this action. Only those members who opt-in to the Collective Action will release their rights to sue under the FLSA.

**Attorney Fees and Costs**. Plaintiff concurrently moves the Court for approval of an attorney fee award of 35% of the Settlement Fund.

## ARGUMENT

**I.     The Court Should Conditionally Certify the Stipulated FLSA Collective Action.**

The Parties stipulate to the conditional certification of an FLSA collective action defined as: "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages."

To obtain conditional certification, the Parties must demonstrate "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132 (D. Colo. Dec. 20, 2011) (internal citation omitted) (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (internal quotations omitted). This is a "lenient standard,"

5

which "typically results in conditional certification of a representative class." *Id*. (quoting *Renfro v. Spartan Comp. Servs., Inc.*, 243 F.R.D.431, 432 (D. Kan. June 20, 2007)) (internal quotations omitted).

Here, Plaintiff has alleged (and the Parties agree for purposes of obtaining approval of the Settlement Agreement) that Class Members are or were (during the relevant time) employed by Defendant as hourly health care workers. Plaintiff alleges that Defendant misclassified some of their hourly employees as independent contractors and failed to pay them proper overtime wages for overtime hours worked. ECF No. 18.  Defendant does not contest these allegations for purposes of this Motion. These allegations are sufficient to show that the putative opt-in Plaintiffs are similarly situated for the purposes of the FLSA. The Court should conditionally certify the Collective Action and order that the Notice attached hereto as Exhibit A to the Settlement Agreement at Exhibit 1 be disseminated, in English and Spanish, to all such putative opt-in Plaintiffs. The Court should order that putative opt-in Plaintiffs will have 45 days to opt-in to the Action per the Notice should they so choose.

**II.     The Court Should Preliminarily Certify the Rule 23 Class**

The Parties stipulate to the preliminary certification of a Fed. R. Civ. P. 23 Class defined as: "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages." In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court held that a district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but that the other requirements for certification must still be satisfied. *Id.*

6

at 620. Each of the Fed. R. Civ. P. 23(a) and 23(b)(3) requisites for class certification is satisfied here.

###### A. The Rule 23 Class is Sufficiently Numerous

To satisfy Rule 23's numerosity requirement, the class must be so numerous that joinder of all members would be "impracticable." Fed.R.Civ.P. 23(a)(1). "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010). Here, there are 28 putative members of the Class. The Parties stipulate to satisfaction of the numerosity requirement. The certification sought is for settlement purposes only. The result of the Settlement would be the same whether all 28 putative Class Members are joined into the action, or if they are gathered into a Rule 23 Class. An order forcing the Parties to join all the putative Class Members would not serve judicial economy. The Court should find that the Settlement Class is sufficiently numerous such that joinder would be impracticable under these circumstances.

###### B. The Commonality Requirement Is Met

The proposed class features two basic questions of law and fact that are common to every member of the class: Whether they were subject to a common policy of misclassification as independent contractors and whether they were not paid proper overtime wages. "A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010); *Bass*, 2011 WL 2149602 *2-3 (similar common questions justified certification of Colorado Minimum Wage Act class action). The proposed Class satisfies the commonality requirement of Fed.R.Civ.P. 23(a)(2).

### C. The Typicality Requirement Is Met

"A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *In re Qwest Savings And Investment Plan ERISA Litigation*, No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-15 (D. Colo. Sept. 24, 2004). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiff challenges Defendant's application of an alleged overtime-avoidance policy, conduct Plaintiff claims was universally applied to the proposed class of employees. Because Plaintiff's claims challenge the same conduct under the same legal and remedial theories as do the claims of the absent class, her claims are typical of the class's claims under Fed.R.Civ.P. 23(a)(3).

### D. Adequacy of Representation

Fed.R.Civ.P. 23(a)(4) requires that the representative parties to a class action fairly and adequately protect the interests of the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez*, 268 F.R.D. at 396- 397 (internal citation omitted). Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002)(quotation omitted). "Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of

8

representation should be resolved in favor of upholding the class, subject to later possible reconsideration…" *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998).

### i. The Named Plaintiff and Her Counsel Have No Conflicts of Interest With Other Class Members.

The named Plaintiff has the same interest in vindicating her wage rights as do absent members of the putative class. Nor does Plaintiff's counsel have any conflict of interest with the members of the putative class. Where, as here, there is no divergence between the interests of the Plaintiff, her counsel and of the class, the first element of Rule 23(a)(4) is satisfied. *Belote v. Rivet Software, Inc., No.* 12-CV-02792-WYD-MJW, 2013 WL 2317243, at *3 (D. Colo. May 28, 2013).

### ii. Named Plaintiff and Her Counsel Will Prosecute this Action Vigorously on Behalf of the Class.

Plaintiff selected specialized, bilingual counsel with extensive experience in litigating the minimum labor standards claims of low-wage workers. Plaintiff's counsel has successfully served as class counsel in numerous certified Rule 23 class actions and 29 U.S.C. §216(b) collective actions similar to this one. "[T]he experience of the proposed class representative's chosen counsel in similar previous litigation has been held an important factor favoring adequacy of representation. With regard to whether a lead plaintiff and its counsel will vigorously prosecute the action on behalf of the class, 'the experience and competence of the attorney representing the class may inform the court's analysis.'" *United Food & Commer. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 654 (W.D. Okla. 2012) (internal citations omitted). Plaintiff and her counsel have and will continue to prosecute this action vigorously on behalf of the class.

### E. The Proposed Class Satisfies the Requirements of Fed.R.Civ.P. 23(b)(3)

Because the questions of law and fact common to class members predominate over individual issues, and because the class action is the superior method for adjudicating this case,

9

the proposed class satisfies the requirements of Fed.R.Civ.P. 23(b)(3). In deciding predominance under Rule 23(b)(3), the Court "must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members… Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *United Food and Commercial Workers Union*, 281 F.R.D. at 655 (quotation omitted).

This case involves a controversy spanning Defendant's misclassified hourly workforce and recurring each time a misclassified employee worked overtime hours and was not paid properly. The representative Plaintiff's claims and those of the class arise from the same legal grievances, and questions common to these claims regarding whether Defendant's classification and wage policies violated the law will be litigated repetitively if these claims are not aggregated. "In terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims." *Bass v. PJCOMN Acquisition Corp.,* No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *4 (D. Colo. June 1, 2011).

The class action is a superior method of adjudicating the instant case because the absent class members have shown no interest in controlling the litigation of separate actions; because no other litigation regarding this controversy has been commenced; and because concentration of claims here is desirable because all claims arose in this judicial district. Fed.R.Civ.P. 23(b)(3)(A)-(C). The class action vehicle is also the superior method for adjudicating this controversy because it involves the relatively small claims of low-wage workers. Courts in this District have repeatedly

10

recognized that a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued. *Belote*, 2013 WL 2317243 *4; *Maez,* 268 F.R.D. at 397*; Cook v. Rockwell International Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998). The class action is thus the superior vehicle for the fair and efficient settlement of this controversy. Fed.R.Civ.P. 23(b)(3).

**III.    The Court Should Approve the Class Settlement as Fair and Reasonable for the Purposes of the Fair Labor Standards Act.**

In actions involving FLSA claims, such as the one here, "the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Morton v. Transcend Servs*., 2017 WL 977812, *1 (D. Colo. March 13, 2017) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

A district court may approve an FLSA collective action settlement after "scrutinizing settlement for fairness" and deciding whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982).

> [I]n determining whether to approve a FLSA settlement, this Court considers whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees. With respect to the second factor, this Court evaluates, first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA. In considering whether the FLSA has been undermined, this Court looks at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA.

*Herring v. Thunder Ridge Trucking and Filtration, Inc.,* 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

11

### A. The Parties Are Resolving a Bona Fide Dispute

Parties seeking approval of an FLSA settlement may establish that a bona fide dispute exists by presenting: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage." *Baker v. Vail Resorts Mgmt. Co.*, 2014 WL 700096, *1 (D. Colo. Feb. 24, 2014).

Here, as to *Baker* factor (1), Defendant disputes whether some of its hourly health care providers were misclassified as independent contractors and contend that any violations of the FLSA were not willful. As to *Baker* factor (2), the Parties represent that Defendant operates a health care staffing agency. The settling Plaintiffs worked for Defendant on an hourly basis.

As to *Baker* factor (3), Defendant disputes whether it misclassified some of its workers as independent contractors. The employees, on the other hand, and in reference to *Baker* factor (4), allege that Defendant unlawfully classified them as independent contractors and failed to pay them overtime premium rates for overtime hours worked.

As to *Baker* factor (5), the parties based their settlement discussions on an in-depth review of Defendant's time-worked and wages-paid records. In light of all of the above, the Parties disagree as to the merits and "this case is not sham litigation… it very much involves a bona fide dispute between adversarial opponents." *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013).

B.  **The Settlement is Fair and Equitable to All Parties.**

1.  **The Settlement is Fair and Reasonable**

In determining whether an FLSA settlement is fair and reasonable, Courts consider the same factors applied in the Rule 23 settlement fairness analysis described in section IV, *infra*. *Baker*, 2014 WL 700096, *2 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).  The parties reiterate without repeating their arguments detailed in section IV below.

2.  **The Settlement Does Not Undermine the FLSA**

To find that an FLSA settlement does not undermine the Act, courts query whether the proposed settlement adheres to the statute's purpose, which is to protect employees' rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL 700096, *2. To make this determination, courts examine (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Herring*, 2016 WL 7868819, at *2 (D. Colo. May 24, 2016).

Here, all Defendant's employees who were similarly situated to Plaintiff during the applicable statutory periods were included in the Rule 23 Class. The hybrid nature of Plaintiff's complaint ensured that every single one of Defendant's employees who were disadvantaged by their employers' superior bargaining power, and who were allegedly denied overtime pay, would be included in the class settlement in the employees' favor. By including and recovering damages for all similarly-situated employees, this lawsuit countered the bargaining power advantage normally enjoyed by Defendant. This settlement thus effectuates rather than undermines the purpose of the FLSA.

Given that Defendant has paid a high price for its alleged violations of the FLSA, it has a strong incentive to refrain from engaging in conduct violative of the statute in the future. Because Defendant's employees have now participated in a successful wage enforcement class action, and because the class members will be in contact with their counsel who specializes in FLSA litigation, Defendant is aware that any future violations of the statute would be very likely to come to light and be litigated, further deterring future violations. Finally, Defendant represents that it has no history of non-compliance with the FLSA.

### C. The Settlement Contains a Reasonable Award of Attorney Fees.

The FLSA provides "[t]he court … shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 28 U.S.C. § 216(b). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *Ali v. Jerusalem Restaurant, Inc.*, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015). Plaintiff concurrently moves the Court for approval of counsel's fee award totaling 35% of the Settlement Fund.

## IV. The Court Should Grant Preliminary Approval of the Settlement Per Rule 23

A class action under Rule 23 may not be dismissed, compromised, or settled without the approval of the Court. Fed. R. Civ. P. 23(e). The object of preliminary approval is for the Court "to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. Mar. 22, 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing"). "A proposed

14

settlement of a class action should therefore be preliminarily approved where it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *In re Crocs, Inc. Securities Litigation,* 2013 WL 4547404 at *3 (D. Colo. Aug. 28, 2013). In considering whether a proposed settlement agreement should receive the Court's preliminary approval, the Court looks to the factors that will ultimately govern its final approval or disapproval of the settlement. *Id.* Those factors include whether: (1) the settlement was honestly and fairly negotiated and not the product of collusion; (2) serious questions of law and fact exist that render the ultimate outcome of the litigation uncertain; (3) the value of the immediate recovery outweighs the possibility of relief in the future following litigation; and (4) in the judgment of the parties the settlement is fair and reasonable. *Id.* at *10. While the Court may not be required to delve deeply into these factors at the preliminary approval stage, if the parties do establish that these factors are met, "courts usually presume that the proposed settlement is fair and reasonable." *Id.* at *10-11; *see also Sobolewski v. Boselli & Sons, LLC et al.,* Case No. 16-cv-01573-RM-STV (ECF No. 182 at *4).

### A.   The Proposed Settlement was Fairly and Honestly Negotiated.

This case was litigated, and the proposed settlement was reached, in the context of Plaintiff's federal class action lawsuit. The parties were represented by counsel with extensive experience in wage and hour class litigation. The parties reviewed voluminous time-worked and wage payment records. The Parties agreed to engage in early settlement negotiations and exchanged a large volume of timekeeping and wage payment data in preparation for mediation. The Parties were assisted in their negotiations by Judge Starnella of the U.S. District Court. Settlement negotiations were contested and contentious. Counsel utilized their experience in

similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable compromise.

      **B.    Serious Questions of Law Exist.**

Whether the Class was misclassified as independent contractors is a hotly contested issue of fact on which both sides perceived litigation risk. Whether Defendant's violations of the FLSA and CWCA were willful, which would determine whether the Class was entitled to liquidated damages and treble damages penalties under each statute, respectively, is also a contested issue where both sides perceived risk. These questions, which presented the potential for expensive and prolonged appellate practice, are serious ones that counseled toward a mediated resolution.

      **C.    The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.**

As above, the Parties face risk regarding whether the Class was misclassified as independent contractors and they face the risk of protracted appellate practice. The value of the settlement, wherein Class Members will recover approximately 74% of all the unpaid wages, liquidated damages and penalties they may have won on their very best day at trial, makes the immediate recovery provided by the Settlement outweigh the possibility of future relief.

      **D.    It is the Parties' Judgment that the Settlement is Fair and Reasonable.**

The Parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable. The Court should approve the settlement as fair and reasonable for the purposes of Rule 23.

**V.    The Service Award is Reasonable.**

Representative plaintiffs are eligible for reasonable incentive payments as part of class action settlements. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). When evaluating the reasonableness of an incentive award, courts may consider factors such as "the actions the plaintiff

has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

The $10,000.00 service award here is appropriate because Class Representative Kasondra Mathews took a substantial risk in coming forward with allegations Defendant's wage and hour law violations when no other employees were willing to do so. Plaintiff also materially assisted counsel in reviewing documents, communicating with class members and bringing the case to a successful conclusion to the benefit of all of her co-workers. The Class Representative was not compelled to testify either by deposition or at a court hearing or to answer discovery; however, she advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations. She worked hard in preparing for and attending the Settlement Conference, where she parried opposing counsel's arguments against her case and her damages calculations with skill. She obtained an excellent result for her fellow Class Members. The modest incentive award sought here is reasonable. *See Bagoue v. Developmental Pathways, Inc.*, 16-cv-01804, Doc. 149 (D. Colo. Oct. 28, 2020) (awarding $30,000 to a single class representative); *Valverde v. Xclusive Staffing, Inc.,* 16-cv-00671*,* Doc. 322 (D. Colo. July 20, 2020) (awarding $20,000 to each of the five class representatives).

**VI.     The Court Should Order the Parties to Issue the FLSA Notice and Subsequently the Rule 23 Settlement Notice.**

If the Court grants conditional certification to the FLSA Collective Action, it should order the parties to issue, in English and Spanish, the FLSA Notice, attached hereto as Exhibit A to the Settlement Agreement at Exhibit 1. The notice is proper because it informs potential opt-in Plaintiffs of their right to participate in the lawsuit, informs them that they may retain outside

17

counsel to represent them or they may elect to be represented by Plaintiff's counsel, and informs them that they may choose not to join the case. The parties propose to issue the FLSA notice with a 45-day period for members to opt-in. After the close of the FLSA opt-in period, Plaintiff will be able to calculate with precision the amount due to each Rule 23 Class Member and will include such figures in the Rule 23 Settlement Notice, attached hereto as Exhibit B to the Settlement Agreement at Exhibit 1. The Rule 23 Notice describes the nature of the lawsuit and the makeup of the Class and informs members that they may opt-out of or object to the settlement, and that they will be bound by the terms of the settlement if they take no action within the 45-day period allotted.

The Court should order the parties to issue, in English and Spanish, the FLSA Notice and, after the close of the FLSA opt-in period, the Rule 23 Settlement Notice.

## **CONCLUSION**

For the reasons set forth above, the Parties respectfully request that the Court:

1. Conditionally certify a stipulated collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages" and order that notice be sent to all members so that they have the opportunity to opt-in to this action;

2. Preliminarily certify a Class Action under the non-FLSA class claims brought by Plaintiff per Fed. R. Civ. P. 23 defined as "All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages" and order that notice be sent to this group so that members have the opportunity to opt-out of the proposed Settlement;

18

3. Appoint Brandt Milstein as Class Counsel and Kasondra Mathews as Class Representative;

4. Grant preliminary approval to the Parties' Settlement Agreement (Exhibit 1); and

5. Set a final fairness hearing at the Court's earliest convenience at least 140 days after the date on which the Court grants this Motion.

Respectfully submitted this 6th day of August, 2025.

| | |
|---|---|
| *s/ Brandt P. Milstein* | *s/ Colin L. Barnacle* |
| Brandt P. Milstein | Colin L. Barnacle |
| MILSTEIN TURNER, PLLC | GREENSPOON MARDER LLP |
| 2400 Broadway, Suite B | 1144 15th Street, Suite 2700 |
| Boulder, CO 80304 | Denver, CO 80202 |
| 303.440.8780 | 720.702.0904 |
| brandt@milsteinturner.com | Colin.Barnacle@gmlaw.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, using the CM/ECF system, which will send notification of such filing to all parties entitled to notice.

*s/ Brandt Milstein*

19