IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-01518-PAB-KAS

KASONDRA MATHEWS, on her own behalf and on behalf of all others similarly
situated,

      Plaintiff,

v.

ELITE NURSES MANAGEMENT LLC,

      Defendant.

---

## ORDER

---

This matter is before the Court on the Joint Motion for Preliminary Approval of Collective and Class Action Settlement [Docket No. 38] and Unopposed Motion for Attorney Fee [Docket No. 42]. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On May 1, 2024, plaintiff Kasondra Mathews filed her complaint in the District Court for Jefferson County, Colorado. Docket No. 18. On May 29, 2024, defendant Elite Nurses Management LLC removed this case to federal court. Docket No. 1. The complaint alleges that Ms. Mathews was employed by defendant from approximately 2020 to 2023. Docket No. 18 at 2, ¶ 7. Ms. Mathews brought this action on behalf of a class consisting of "[a]ll hourly employees who worked on or after May 1, 2018 who were not paid overtime wages for overtime hours worked." *Id*. at 3, ¶ 23. Ms. Mathews also brings this action on behalf of a collective pursuant to 29 U.S.C. § 216(b) consisting

of "[a]ll hourly employees who worked on or after May 1, 2021 who were not paid overtime wages for overtime hours worked."  *Id.* at 5, ¶ 38.[1]

The complaint states that defendant is a staffing agency that employed Ms. Mathews and "those similarly situated as health care workers and provided them to staff health care facilities around Colorado."  *Id.* at 2, ¶ 12.  The complaint alleges that, "[t]hough Plaintiff and others were not exempt from the overtime protections of Colorado and federal law, Defendant refused to pay all overtime wages due to some or all of its employees."  *Id.*, ¶ 13.  The complaint brings claims for violations of the Colorado Overtime and Minimum Pay Standards ("COMPS"), 7 CCR 1103-1:1, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the Colorado Wage Claim Act ("CWCA"), Colo. Rev. Stat. § 8-4-101.  *Id.* at 7-8.

## II.  PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 occurs in two stages.  In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the settlement's fairness.  In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

---

[1] In their instant motion, the parties have modified the class and collective definition for which they seek preliminary certification.  *See* Docket No. 38 at 1-2.

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  Plaintiffs bear the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

The parties ask the Court to certify a settlement class under Rule 23(b)(3). Docket No. 38 at 6-7.  Under that provision, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining predominance and superiority under Rule 23(b)(3), the court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To certify a settlement class, the court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D).

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23

requirements apply and demand heightened attention in the settlement context because

the court generally lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If

the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then

the court must separately evaluate whether the settlement agreement is "fair,

reasonable, and adequate" under Rule 23(e).[2]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l

Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, a court will direct

notice to all class members who would be bound by the proposed settlement agreement

and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class
> representatives and class counsel have adequately represented the class; (B)
> the proposal was negotiated at arm's length; (C) the relief provided for the class
> is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class,
> including the method of processing class-member claims; (iii) the terms of any
> proposed award of attorney's fees, including timing of payment; and (iv) any
> agreement required to be identified under Rule 23(e)(3); and (D) the proposal
> treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as

stringent as those for final approval, the final approval standards inform the court's

preliminary inquiry.  A court's review for final approval is to "focus[] on whether '(1) the

settlement was fairly and honestly negotiated, (2) serious legal and factual questions

placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable

---

[2] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule
23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as
an additional requirement."  521 U.S. at 621.

than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## III. ANALYSIS OF PROPOSED SETTLEMENT AGREEMENTS

### A. The Settlement Agreement

The parties' motion for preliminary approval of the class settlement seeks certification of a class of "[a]ll Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages."[3]  Docket No. 38 at 6.

The settlement agreement provides for a $100,000 gross settlement fund.  *Id.* at 3; Docket No. 38-1 at 1.  The settlement fund includes a $10,000 service award to Ms. Mathews, $35,000 for class counsel's attorney's fees and costs, and $55,000 for the class, less "settlement administration costs (not to exceed $10,000) and the employer's share of FICA and FUTA taxes, and other applicable employer tax contributions, arising from the payment of back wages."  Docket No. 38 at 3-4; Docket No. 38-1 at 2-3. Defendant will be "responsible for issuing all payments contemplated under the Agreement."  Docket No. 38 at 4.  The net settlement fund[4] will be "distributed on a proportionate basis to all Participating Class Members based on unpaid overtime

---

[3] The Court will modify this definition to reflect the defendant's correct name, which is Elite Nurses Management LLC.

[4] The settlement agreement defines the net settlement fund as "the Gross Settlement Fund minus any approved amounts for Class Counsel's fees and costs, the Administrator's costs, the service payment to the Class Representative, and the employer's share of FICA and FUTA taxes, and other applicable employer tax contributions, arising from the payment of back wages."  Docket No. 38-1 at 2.

reported on Defendant's pay records." *Id.* The settlement agreement requires defendant to provide "class member data as necessary to Class Counsel to allow for calculation and distribution of individual settlement awards." Docket No. 38-1 at 3-4. Ten days after the Court's final approval of the settlement agreement, defendant "shall make payment of settlement awards to Class Members, Plaintiff's counsel's attorney's fees and costs, and the incentive award."[5] *Id.* at 6. Ms. Mathews and participating class members shall release their claims against defendant pursuant to the settlement agreement. *Id.*

### B. Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Here, the parties state that the settlement class contains 28 putative members. Docket No. 38 at 7. "[T]here are [] several factors that enter into the impracticability issue," including "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014) (internal quotations and citation omitted). The Tenth Circuit has found fewer potential claimants than 28 can satisfy numerosity. *See, e.g., Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."). The parties contend that an "order forcing the Parties to join all putative

---

5 The settlement agreement uses the term "incentive award" to refer to the $10,000 service award to be paid to Ms. Mathews. *See* Docket No. 38-1 at 3.

Class Members would not serve judicial economy" because the "result of the Settlement would be the same whether all 28 putative Class Members are joined into the action, or if they are gathered into a Rule 23 Class." Docket No. 38 at 7.

Because interests of judicial economy weigh in favor of class-wide adjudication, the Court agrees that the proposed class satisfies the numerosity requirement. *See* 1 Bruce Bromley, Newberg and Rubenstein on Class Actions § 3:11 (6th ed. 2025) ("where joinder is impracticable, judicial economy weighs in favor of representative litigation of common issues for similarly situated plaintiffs"). The "relatively small claims of [the] low-wage workers" in the proposed class, *see* Docket No. 38 at 10, weigh in favor of finding that joinder of the individual plaintiffs is impracticable. *See Gross v. United States,* 128 Fed. Cl. 745, 766 (2016) ("The size of prospective class members' individual claims is relevant to the numerosity inquiry because in circumstances where there are numerous prospective claimants with small claims, a class action allows those individuals to pursue their claims without incurring litigation costs that would overwhelm their potential recoveries.").

Accordingly, the Court finds that the numerosity requirement is satisfied. *See also* Bromley, 7 Newberg and Rubenstein on Class Actions § 23:18 ("Even when plaintiffs propose smaller classes in employment actions, courts are particularly sensitive to the possibility that employees might face retaliation in the workplace were they to step forward and sue individually; given this particular employment-related concern, courts are even more apt to certify smaller classes in the employment context than in most other types of class action.").

**C.  Commonality**

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires that plaintiffs demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

The parties contend that the "proposed class features two basic questions of law and fact that are common to every member of the class: Whether they were subject to a common policy of misclassification as independent contractors and whether they were not paid proper overtime wages."  Docket No. 38 at 7.  Because a "finding of commonality requires only a single question of law or fact common to the entire class," *see Devaughn*, 594 F.3d at 1195, the Court finds that the commonality requirement is satisfied.  *See Stanley v. Panorama Orthopedics & Spine Ctr., P.C.,* No. 22-cv-01176-RM-SBP, 2024 WL 1743497, at *4 (D. Colo. Apr. 23, 2024) (agreeing with the parties that "commonality is met here because the proposed class features two basic questions of law and fact that are common to every member of the class: Whether each worked hours off-the-clock and whether non-payment of wages for those hours violated state

9

and federal wage law") (internal quotation, alteration, and citation omitted); *Shahlai v.
Comcast Cable Commc'ns Mgmt., LLC*, No. 16-cv-2556-WJM-NRN, 2018 WL 3870129,
at *4 (D. Colo. Aug. 15, 2018) (holding that the commonality requirement was satisfied
where the parties asserted that "the Settlement Class Members are joined by the
common questions of law and fact that arise from [defendant's] alleged failure to pay
minimum wages") (citation omitted).

  Accordingly, the Court finds that the commonality requirement is satisfied.

### D.  Typicality

  Rule 23(a)(3) requires that the "claims or defenses of the representative parties
are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The
typicality requirement ensures that the absent class members are adequately
represented by the lead plaintiffs such that the interests of the class will be fairly and
adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,
157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from
the same course of events, and each class member makes similar legal arguments to
prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).
The interests and claims of the lead plaintiffs and the class members need not be
identical to satisfy typicality and, provided the claims of the lead plaintiffs and class
members are based on the same legal or remedial theory, differing fact situations of the
class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99.
Nevertheless, "it is well-established that a proposed class representative is not 'typical'
under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to
become a major focus of the litigation."  *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583,

599 (3d Cir. 2012) (citation and quotation omitted).  The parties contend that Ms.

Mathew's claims are typical of the class claims because "Plaintiff challenges

Defendant's application of an alleged overtime-avoidance policy, conduct Plaintiff claims

was universally applied to the proposed class of employees."  Docket No. 38 at 8.  The

Court agrees that Ms. Mathew's claims are typical claims of the proposed class.

Accordingly, the Court finds that the typicality requirement is satisfied.  *See Stanley*,

2024 WL 1743497, at *4 (holding that the typicality requirement was satisfied because

"[t]he Named Plaintiffs, like all members of the putative class, allege that they were not

paid for the off-the-clock hours they worked and that this non-payment violated the

same state and federal laws as to each of them").

### E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has

noted, the "adequacy-of-representation requirement tends to merge with the

commonality and typicality criteria of Rule 23(a), which serve as guideposts for

determining whether maintenance of a class action is economical and whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence."  *Amchem*, 521

U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4)

serves to uncover conflicts of interest between named parties and the class they seek to

represent."  *Id.* at 625.  To be an adequate class representative, the "representative

must be part of the class and possess the same interest and suffer the same injury as

the class members."  *Id*. at 625-26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by Ms. Mathews and her counsel. Ms. Mathews states that she "has the same interest in vindicating her wage rights as do absent members of the putative class" and Ms. Mathews's counsel does not have "any conflict of interest with the members of the putative class." Docket No. 38 at 9. With regard to the first adequacy factor, Ms. Mathews's interests are aligned with those of the proposed settlement class because she seeks relief for injuries arising out of the same conduct by defendant that resulted in unpaid overtime wages. Further, there is nothing in the record to show any conflict of interest between Ms. Mathews or counsel and the rest of the class. Moreover, any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel, Brandt Milstein of Milstein Turner, PLLC, "has successfully served as class counsel in numerous certified Rule 23 class actions and 29 U.S.C. §216(b) collective actions similar to this one." *See id.* Mr. Milstein is "bilingual counsel with extensive experience

12

in litigating the minimum labor standards claims of low-wage workers."  *Id.*  There are no

questions regarding the competency of the proposed class counsel or his ability to

prosecute this action, and, to the extent any such questions do arise, they will be

considered at the fairness hearing.  Accordingly, at this preliminary stage, because Ms.

Mathews and proposed class counsel do not have a conflict of interest with the rest of

the class and have shown that they can vigorously litigate on behalf of the class, the

Court finds that the adequacy requirement is satisfied.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must

"predominate over any questions affecting only individual members," and class

resolution must be "superior to other available methods for the fair and efficient

adjudication of the controversy."  *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that

courts should consider the following factors when certifying a class: (A) the interest of

members of the class in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class; (C) the desirability of concentrating the

litigation of the claims in the particular forum; and (D) the difficulties likely to be

encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance

requirement imposes an obligation upon district courts to ensure that issues common to

the class predominate over those affecting only individual class members.  *Sullivan v.

DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance

criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement.

*Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation omitted).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.

The Court agrees with the parties that proof of a "controversy spanning Defendant's misclassified hourly workforce and recurring each time a misclassified employee worked overtime hours and was not paid properly" is a question that goes to the alleged wage violations common to the entire class.  *See* Docket No. 38 at 10. Evidence of unpaid wages and misclassification across the wages of defendants' employees is a common question that goes to the alleged injury.  *See Stanley*, 2024 WL 1743497, at *6 (finding that common questions predominate in a case regarding unpaid wages because the court found that there was a dominant injury, even if the "*amount* of damages will vary among the class members").  Although the damages may vary for individuals in the class, the question of what wages should have been paid will be common to the class and is enough at this stage to show a common question on the measure of damages.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation, saving both class members and defendants significant time and legal costs to

adjudicate common legal and factual issues.  Additionally, the parties state that "the

absent class members have shown no interest in controlling the litigation of separate

actions" and "no other litigation regarding this controversy has been commenced."

Docket No. 38 at 10.  Thus, given that the class members' claims arise from the same

series of events, the Court finds that conducting the class action settlement in this forum

would achieve economies of time, effort, and expense and promote uniformity of

decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at

104.  Therefore, because class members will receive the same type of relief and have

claims that present common questions of fact and law, the Court finds that class

certification is appropriate because the class questions predominate over individual

questions and the settlement class is a superior method of resolving this litigation.  *See*

*Amchem*, 521 U.S. at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a

"finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making

this determination, "trial judges bear the important responsibility of protecting absent

class members" and must be "assur[ed] that the settlement represents adequate

compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*,

629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the

Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements

affecting their rights when the representatives become fainthearted before the action is

adjudicated or are able to secure satisfaction of their individual claims by a compromise"

(citations omitted)).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

Based on the information available to the Court, the Court notes the following, which weigh in favor of preliminary approval: (1) the proposed settlement agreement is the product of early settlement negotiations, assisted by Magistrate Judge Kathryn A. Starnella, and the exchange of "a large volume of timekeeping and wage payment data"; (2) the parties were represented by counsel with extensive experience in wage and hour class action litigation who "utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk"; and (3) there is no evidence that the settlement agreement was the result of a collusive agreement between the parties.  *See* Docket No. 38 at 15-16.  The Court therefore finds that the negotiations were conducted fairly

and honestly.  Furthermore, the parties represent that, "[w]hether the Class was misclassified as independent contractors is a hotly contested issue of fact on which both sides perceived litigation risk."  *Id.* at 16.  The parties also represent that it is contested whether defendant's violations of the FLSA and CWCA were willful, which determines the class's entitlement to liquidated and treble damages.  *Id.*  As a result, the Court finds that the serious questions factor weighs in favor of the proposed settlement agreement.

The settlement agreement provides for an attorney's fee award of $35,000.  Docket No. 38-1 at 2-3; Docket No. 42 at 1.  Local Rule 54.3(b) requires that a motion for attorney's fees shall include the following for each person for whom fees are claimed: (1) a summary of the relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.  D.C.COLO.LCivR 54.3(b).  To determine the reasonableness of a fee request, a court must begin by calculating the "lodestar amount."  *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience.  *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002).  A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award.  *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir. 1995).

The proposed attorney's fee award is 35% of the settlement fund.  Docket No. 38-1 at 2-3; Docket No. 42 at 1.  This amount is "typical of those commonly found reasonable in class settlements."  *See Stanley*, 2024 WL 1743497, at *9 (collecting cases).  Furthermore, 35% of the settlement fund is lower than counsel's earned lodestar amount, $51,060.00, *see* Docket No. 42 at 5, which the Court finds reasonable having reviewed the detailed billing records submitted by Mr. Milstein.  *See* Docket No. 42-1 at 6-10.

Regarding the $10,000 service award for Ms. Mathews, the Court finds that this amount is reasonable.  "When determining whether a service award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefited from those actions, the time and effort required to pursue the litigation, and any reasonable fears of workplace retaliation."  *Stanley,* 2024 WL 1743497, at *13.  The parties contend that Ms. Mathews "took a substantial risk in coming forward with allegations [of] Defendant's wage and hour law violations when no other employees were willing to do so."  Docket No. 38 at 17.  The parties represent that Ms. Mathews "advocated for the interests of the Class Members and made sure that the interests of the Class were at the forefront of negotiations."  *Id.*  Ms. Mathews also helped prepare for and attended the settlement conference.  *Id.*  These are "consequential tasks" and the service award "appear[s] to be in line with . . . awards . . . that have been approved in class settlements in this District."  *See Stanley*, 2024 WL 1743497, at *14.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief.  This factor weighs in favor of the

proposed settlement.  The parties argue that the "value of the settlement, wherein Class Members will recover approximately 74% of all the unpaid wages, liquidated damages and penalties they may have won on their very best day at trial, makes the immediate recovery provided by the Settlement outweigh the possibility of future relief."  Docket No. 38 at 16.  Given the prospect of shortening what could be prolonged litigation and providing partial guaranteed relief, the Court finds that immediate recovery outweighs the possibility of future relief.  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.  With regard to the fourth factor, the parties' counsel has extensive experience in wage and hour class action litigation and represents that the settlement agreement is fair and reasonable.  *Id*. at 15.

In conclusion, certifying the class will allow Ms. Mathews to gain immediate resources to litigate her remaining claims and allow the Court to determine whether there are other members of the class that challenge the fairness of the parties' proposed settlement agreement.  Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).

The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at

535, is sufficient to preliminarily approve the terms of the proposed settlement

agreement.

## IV.  PRELIMINARY APPROVAL OF FLSA COLLECTIVE SETTLEMENT

To preliminarily approve an FLSA collective settlement, courts must (1)

conditionally certify the FLSA collective; and (2) preliminarily approve the FLSA

settlement.  *See Stanley*, 2024 WL 1743497, at *11.

Title 29 U.S.C. § 216(b) of the FLSA provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be
> liable to the employee or employees affected in the amount of . . . their unpaid
> overtime compensation, . . . and in an additional equal amount as liquidated
> damages . . . An action to recover the liability prescribed in [section 207] may be
> maintained against any employer . . . in any Federal . . . court of competent
> jurisdiction by any one or more employees *for and in behalf of himself or
> themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added).  There is a two-step approach for determining

whether plaintiffs are "similarly situated" for purposes of FLSA collective action

certification.  *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1]  A

court's initial certification comes at the notice stage, where courts determine whether

plaintiffs are similarly situated for purposes of sending notice to putative collective

members.  *Id.* at 1102.  Plaintiff is required to provide "nothing more than substantial

allegations that the putative class members were together the victims of a single

---

[1]*Thiessen* involved a collective action under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Because the ADEA adopts the
collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA
collective actions.  *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D.
Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679
(D. Kan. 2004).

decision, policy or plan." *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012). This is a "lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). The second stage, which comes at the conclusion of discovery, applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03.

When employees file suit under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable. *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982); *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014). Requiring court approval of FLSA settlements effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945). To approve the settlement agreement, the court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney's fees. *Lynn's Food Stores,* 679 F.2d at 13; *Baker*, 2014 WL 700096, at *1.

## V.  ANALYSIS OF FLSA COLLECTIVE SETTLEMENT

### A.  Conditional Certification of FLSA Collective

The parties move to conditionally certify the following collective:

All Elite Nurses LLC Colorado employees who were classified as 1099 contractors from July 31, 2020 through December 31, 2023 and who were not paid proper overtime wages.

Docket No. 38 at 5.[6]

The Court finds that the complaint provides substantial allegations that the putative collective members are similarly situated.  *See Thiessen*, 267 F.3d at 1102-03. The complaint alleges that "[a]ll potential collective action Members are similarly situated because they worked for Defendant and were subject to Defendant'[s] common policy of avoiding overtime wage payments."  Docket No. 18 at 5, ¶ 40.  Ms. Mathews and the putative collective members were employed as "health care workers" and placed in "health care facilities around Colorado" by defendant.  *Id*. at 2, ¶ 12.  The complaint alleges that defendant subjected its employees to the "same policy and practice of avoidance of overtime premium payments."  *Id*. at 3, ¶ 15.   Furthermore, for the reasons that the Court will preliminarily certify a Rule 23 class, the Court finds that it is proper to conditionally certify an FLSA collective.  *See Stanley*, 2024 WL 1743497, at *10 ("And in light of the overlap between the requirements for preliminarily certifying a Rule 23 class and an FLSA collective action, '[f]or essentially the same reasons explained above, as to Rule 23, and given the parties' stipulation and joint motion, the Court also finds that preliminary certification of the proposed FLSA class is warranted

---

[6] The Court will modify this definition to reflect the defendant's correct name, which is Elite Nurses Management LLC.

under the comparatively lenient standard for preliminary certification and notice of an

FLSA collective action.'") (quoting *Shahlai*, 2018 WL 3870129, at *6).

Accordingly, the Court will conditionally certify the collective as defined by the

parties. *See Renfro*, 243 F.R.D. at 433-34 ("Generally, where putative class members

are employed in similar positions, the allegation that defendants engaged in a pattern or

practice of not paying overtime is sufficient to allege that plaintiffs were together the

victims of a single decision, policy or plan.").

### B. Bona Fide Dispute

Parties seeking approval of an FLSA settlement must provide the court with

sufficient information to determine whether a bona fide dispute exists. *Ostrander v.*

*Customer Eng'g Servs., LLC*, No. 15-cv-01476-PAB-MEH, 2019 WL 764570, at *3 (D.

Colo. Feb. 21, 2019). To meet this obligation, the parties must describe: (1) the nature

of the dispute; (2) the employer's business and the type of work performed by the

employees; (3) the employer's reasons for disputing the employees' right to a minimum

wage or overtime; (4) the employees' justifications for the disputed wages; and (5) if the

parties dispute the computation of wages owed, each party's estimate of the number of

hours worked and the applicable wage. The mere existence of an adversarial lawsuit

does not satisfy these requirements. *Id.*

Ms. Mathews claims that defendants violated COMPS, the FLSA, and CWCA by

refusing to pay overtime wages owed to its employees. *See* Docket No. 18 at 1-2, ¶¶ 3-

5, 13. Ms. Mathews alleges defendant is a "staffing agency [that] employed Plaintiff and

those similarly situated as health care workers and provided them to staff health care

facilities around Colorado." *Id.* at 2, ¶ 12. Ms. Mathews and similarly situated

employees "handled cleaning materials, medications, health care supplies, and other materials which moved in interstate commerce." *Id.* at 3, ¶ 20.  Defendant denies plaintiff's allegations, arguing that Ms. Mathews and similarly situated healthcare workers were independent contractors and thus not owed overtime wages.  Docket No. 8 at 1-2, 3, ¶¶ 3-5, 12.  Defendant also denies that any violations of federal and state law were willful.  *Id.* at 3, ¶ 16.  Finally, the parties represent that they "based their settlement discussions on an in-depth review of Defendant's time-worked and wages-paid record," such that this is not a "sham litigation."  Docket No. 38 at 12 (citation omitted).  Accordingly, the Court finds that a bona fide dispute exists.

### C.  Fair and Reasonable

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employees and must not frustrate the FLSA's policy rationales. *See Ostrander*, 2019 WL 764570, at *4.  Courts considering both individual and collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement.  *Id.*  Courts then determine "whether the settlement undermines the purposes of the FLSA."  *See Stanley*, 2024 WL 1743497, at *11 (citation omitted).

For the reasons described *supra* § III.G, the Court finds that the proposed settlement agreement is fair and reasonable.  The Court next turns to whether the settlement agreement undermines the purpose of the FLSA, which is to protect employees' rights from employers who generally wield superior bargaining power. *Baker*, 2014 WL 700096, at *2.  To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) the presence of other similarly

situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendant had a history of non-compliance with the FLSA. *Id.*

The parties represent that "all Defendant's employees who were similarly situated to Plaintiff during the applicable statutory periods were included in the Rule 23 Class" and that "every single one of Defendant's employees who were disadvantaged by their employers' superior bargaining power, and who were allegedly denied overtime pay, would be included in the class settlement in the employees' favor." Docket No. 38 at 13. In addition, there is no evidence that defendant's alleged failure to comply with the FLSA represents a continuing violation or is part of widespread conduct. *See id*. The parties contend that "Defendant has paid a high price for its alleged violations of the FLSA" and "has a strong incentive to refrain from engaging in conduct violative of the statute in the future." *Id.* at 14. The Court agrees and discerns "no reason to anticipate anything other than Defendants' compliance with the FLSA going forward." *See Stanley*, 2024 WL 1743497, at *12. Finally, defendant "represents that it has no history of non-compliance with the FLSA." Docket No. 38 at 14.

Accordingly, the Court finds that the settlement agreement is fair and reasonable.

### D. Attorney's Fees

The Court must determine whether counsel's requested attorney's fee award of $35,000 is reasonable pursuant to the FLSA. *See* 29 U.S.C. § 216(b) (providing that a court in an FLSA action "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). In common fund cases, courts in this circuit may calculate a reasonable attorney's fee using either the percentage of the fund method or the lodestar method.

*Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994). A fee calculated under either method, however, must be adjusted in accordance with the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by [the] client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Whittington v. Taco Bell of Am., Inc.,* No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483 (stating that *Johnson* factors must be considered regardless of whether court uses lodestar method or percentage of fund method to calculate attorney's fee).

As discussed *supra* § III.G, the Court finds that the $35,000 attorney's fee award is reasonable. Furthermore, the Court finds that the *Johnson* factors support the attorney's fee award provided for in the settlement agreement. Plaintiff's counsel's efforts in this case include, but are not limited to, initial case research, drafting the complaint, preparing for and attending a Fed. R. Civ. P. 26(f) conference, engaging in a discovery process wherein plaintiff's counsel was "required to continuously invoke the Court's Practice Standards regarding discovery disputes to acquire the discovery response and productions to which [plaintiff] was entitled," and preparing and attending the settlement conference. *See* Docket No. 42 at 3-5. This case involves "hybrid classes and so is more complex than either a standalone FLSA collective action or Rule 23 class action would have been." *See Stanley*, 2024 WL 1743497, at *13. Plaintiff's counsel "focuses his practice on representing low-wage workers . . . and has 19 years

of experience litigating wage cases under state and federal law," exhibiting the
"requisite legal skill to perform the service required to bring this complex litigation to a
successful close." Docket No. 42 at 6. Plaintiff's counsel spent 85.1 hours on this
matter, an expenditure of time that precluded work on other matters. *See id.* The
proposed attorney's fee is a reasonable and customary award in similar matters. *See
id.* at 7. The contingency fee arrangement created risks that plaintiff's counsel would
not recover any fees. *See id.* at 8. As discussed above, the settlement fund obtained is
reasonable and constitutes a favorable outcome for Ms. Mathews and the collective.
This case, "which reasonably could only have been litigated via a contingency fee
arrangement, likely rendered it undesirable to a large number of the members of the bar
of this Court." *See Stanley*, 2024 WL 1743497, at *13.

Accordingly, the Court finds that the settlement agreement provides for a
reasonable attorney's fee award.

## VI.  NOTICE TO THE SETTLEMENT CLASS AND COLLECTIVE

Under Rule 23(e)(1), a district court approving a class action settlement "must
direct notice in a reasonable manner to all class members who would be bound by the
proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for
"any class certified under Rule 23(b)(3), the court must direct to class members the best
notice that is practicable under the circumstances, including individual notice to all
members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).
In addition to the requirements of Rule 23, the Due Process Clause also guarantees
unnamed class members the right to notice of a settlement. *DeJulius v. New England
Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However,

due process does not require that each class member receive actual notice to be bound

by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of

absent class members are satisfied so long as "the best notice practicable [is given]

under the circumstances including individual notice to all members who can be

identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d at

1110 (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the

constitutional guarantee of procedural due process are "coextensive and substantially

similar."  *DeJulius*, 429 F.3d at 944.

Once the court concludes that conditional certification of an FLSA collective

action is appropriate, the court may authorize plaintiff to disseminate a proper notice

and opt-in consent form to putative class members.  *Hoffman-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 169-70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee shall

be a party plaintiff to any such action unless he gives his consent in writing to become

such a party and such consent is filed in the court in which such action is brought.").

The court has broad discretion regarding the details of the notice sent to potential opt-in

plaintiffs.  *Hoffman-La Roche*, 493 U.S. at 171.  "The overarching policies of the FLSA's

collective suit provisions require that the proposed notice provide accurate and timely

notice concerning the pendency of the collective action, so that [potential plaintiffs] can

make informed decisions about whether to participate."  *Whitehorn v. Wolfgang's*

*Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal and citations

omitted).

The parties propose to issue the FLSA Notice with a "45-day period for members

to opt-in."  Docket No. 38 at 18.  After the FLSA opt-in period closes, plaintiff will

"calculate with precision the amount due to each Rule 23 Class Member and will include such figures in the Rule 23 Settlement Notice."  *Id.*  Notice to the Rule 23 class will provide for a 45-day period by which putative class members must opt-out or file an objection to the proposed settlement.  *Id.*

The Court finds that the proposed FLSA Notice appears to contain the necessary information, but needs some minor modifications.  *See* Docket No. 38-1 at 10-15.  The notice is addressed to "Elite Nurses LLC Colorado," but that name does not correspond to the case caption or any name referred to in the complaint.  *See* Docket No. 18.  The Court suggests "All Elite Nurses Management LLC employees who were employed in Colorado and who were classified . . . ."  The FLSA Notice informs opt-in collective members of the parties involved, the parties' general allegations, information about the collective action designation, and how and when to opt in.  *See id.*  While the Notice explains that opt-in plaintiffs will be bound by any judgment or settlement that is rendered, it does not explain that opt-in plaintiffs may be required to provide information, appear for a deposition, or testify.  *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566-67 (S.D.N.Y. 2012) (directing "the Plaintiffs to add a provision explaining the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify"); *Luque v. AT&T Corp.*, 2010 WL 4807088, at *7 (N.D. Cal. Nov. 19, 2010) ("[I]t is appropriate to include a statement that class members might 'be required to provide information,' and so the Court adds such a statement to the Notice.").  Accordingly, the parties shall add the following language to the section of the FLSA Notice entitled "4. What Happens if I Join This Lawsuit?":

> While this suit is pending you may be required to submit documents and written answers to questions or to testify under oath at a deposition, hearing, or trial.

In the FLSA Notice, "How Do I Contact Plaintiffs' Attorney?" shall be changed to "How Do I Contact Plaintiff's Attorney?"  *See* Docket No. 38-1 at 11.  The last sentence of Paragraph Three on the Consent to Join Section form shall read, "Alternatively, I may retain my own private counsel to represent me in this matter."  *See id.* at 12.

Turning to the proposed Rule 23 Notice, the notice must "clearly and concisely state in plain, easily understood language:"

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see* Docket No. 38-1.

The proposed Rule 23 Notice does not state that a class member may enter an appearance through an attorney.  Accordingly, the Rule 23 Notice shall be modified to indicate that a class member has the right to do so.  Furthermore, the parties do not define "FLSA" in their Rule 23 Notice.  *See, e.g.*, Docket No. 38-1 at 17, 22.  The Rule 23 Notice shall modify references to the "FLSA" to reference the "Fair Labor Standards Act."  The Opt-Out Form is not clear as to whether a class member who wants to opt out must return the form by all three means listed, i.e., by mail, by fax, and by email, or whether its return by one of those means is sufficient.  *See id.* at 20.  The Opt-Out Form shall read, "This Opt-Out form must be completed, signed and returned to the address below by one of the means listed below so that it is postmarked or received no later than TBD."

Paragraph 1 of the FLSA Notice should note that the term "Class Member" is limited to a person employed in Colorado.

Corresponding changes shall be made to the Spanish versions of both notices. Subject to the revisions indicated above, the Court will approve the proposed notice schedule, FLSA Notice, and Rule 23 Notice.

## VII. CLASS COUNSEL

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The settlement agreement lists Brandt Milstein of Milstein Turner, PLLC as class counsel, and the parties request that Mr. Milstein be appointed as class counsel. Docket No. 38-1 at 1; Docket No. 38 at 2. The Court finds that Mr. Milstein has sufficient experience in wage collective and class actions, and his knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of his appointment. Therefore, the Court finds that it is appropriate to appoint Mr. Milstein as class counsel.

## VIII. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Joint Motion for Preliminary Approval of Collective and Class Action Settlement [Docket No. 38] is **GRANTED**. It is further

**ORDERED** that the Unopposed Motion for Attorney Fee [Docket No. 42] is

**GRANTED**.  It is further

**ORDERED** that this action shall be conditionally certified as a collective action

pursuant to 20 U.S.C. § 216(b).  The collective members are defined as follows:

> All Elite Nurses Management LLC employees employed in Colorado who were
> classified as 1099 contractors from July 31, 2020 through December 31, 2023
> and who were not paid proper overtime wages.

It is further

**ORDERED** that the class, defined as follows, shall be preliminarily certified

pursuant to Fed. R. Civ. P. 23:

> All Elite Nurses Management LLC employees employed in Colorado who were
> classified as 1099 contractors from July 31, 2020 through December 31, 2023
> and who were not paid proper overtime wages.

It is further

**ORDERED** that Kasondra Mathews is appointed as Class and Collective

Representative.  It is further

**ORDERED** that Brandt Milstein is appointed as Class and Collective Counsel.  It

is further

**ORDERED** that the proposed Notices and notice schedule, Docket Nos. 38-1 at

10-24, are approved subject to the parties making the revisions discussed herein.  It is

further

**ORDERED** that the parties shall contact the Court to schedule a final fairness hearing within **seven days** of the date of this order**.**

DATED March 6, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge